IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-02549-WYD-MEH

EUGENE H. MATHISON,

        Applicant,

v.

BLAKE R. DAVIS, Warden,

        Respondent.

_____

**ORDER OF DISMISSAL**
_____

      Applicant Eugene H. Mathison is in the custody of the United States Bureau of

Prisons (BOP) at the Federal Prison Camp in Florence, Colorado. Mr. Mathison

initiated this action by filing a *pro se* Application for a Writ of Habeas Corpus pursuant to

28 U.S.C. § 2241 challenging a determination by the BOP that he is not yet eligible for

home detention pursuant to the provisions of the Second Chance Act of 2007 ("Second

Chance Act"). *See* 42 U.S.C. § 17541(g)(5)(A)(ii). In its Preliminary Response filed on

November 23, 2009, Respondent indicated that it does not assert the defense of failure

to exhaust administrative remedies in this case. The action was drawn to a district

judge and randomly assigned to me on December 17, 2009.

      Section 2241 confers habeas jurisdiction to hear the petition of a federal prisoner

who is challenging not the validity but the execution of his sentence. 28 U.S.C. §

2241(a) and (c)(3). I must construe liberally the Application and all pleadings filed by

Applicant subsequent to the Application, because he is a *pro se* litigant. *See Haines v.*

*Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the Application reasonably can be read "to state a valid claim on which the [applicant] could prevail, [a court] should do so despite the [applicant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, I should not act as a *pro se* litigant's advocate. *See id.*

As an initial matter, I note that Applicant and Respondent do not agree on Applicant's sentencing history. According to Respondent, on July 10, 1997, Applicant was sentenced in the District of South Dakota to a 235 month sentence for Mail Fraud, Wire Fraud, Money Laundering and Engaging in Monetary Transactions, in violation of 18 U.S.C. §§ 1343, 1956, and 1957. Respondent contends that he is also serving a concurrent 21 month sentence for Tax Evasion in violation of 26 U.S.C. § 7201. According to the Respondent, these aggregated sentences are scheduled to expire on December 23, 2013, via good conduct time release. However, Respondent notes that Applicant is also serving a 246 month concurrent sentence for Conspiracy to Defraud the United States, Mail Fraud, Engaging in Monetary Transactions and Money Laundering, in violation of 18 U.S.C. § 371, 1341, 1956 and 1957. The 246 month sentence was imposed on September 12, 1997, and Applicant is projected to release from this term on December 2, 2014, via good conduct time release. According to Applicant, the sentence imposed July 10, 1997, was a 21 month sentence for violation of 26 U.S.C. § 7201, and his September 12, 1997, sentence was a 235 month sentence with an added 11 months for a bail violation. I need not resolve this discrepancy, however, because the parties agree that Applicant is serving a 246 month sentence that

was imposed on September 12, 1997, and that Applicant is projected to be released from this term on December 2, 2014, via good conduct time release.

In this Application, Applicant asserts that the BOP incorrectly calculated his eligibility for participation in the elderly offender home detention pilot program authorized by the Second Chance Act.  The Second Chance Act directs the BOP to conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a BOP facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.  *See* 42 U.S.C. § 17541(g)(1)(A).  The Second Change Act defines an eligible elderly offender, in relevant part, to be an offender who is not less than 65 years of age, serving a term of imprisonment that is not life imprisonment based on conviction for an offense that does not include any crime of violence or sex offense, and *has served the greater of 10 years or 75 percent of the term of imprisonment to which the offender was sentenced*.  *See* 42 U.S.C. § 17541(g)(5)(A).

On February 10, 2009, the BOP reviewed Applicant's eligibility to participate in the pilot program.  As set forth in the BOP Operations Memorandum 003-2009 (5392), dated February 5, 2009, the BOP interprets the phrase "term of imprisonment to which the offender was sentenced" to mean "the term of imprisonment imposed by the sentencing court(s), whether stated in days, months, or years."  The BOP determined that Applicant was ineligible to participate in the pilot program because he had not yet served 75% or more of the term of imprisonment to which he was sentenced.  Based on Applicant's 246 month sentence, the BOP calculated that Applicant would have to have served 184.5 months (or just over 15 years) in order to have served 75% of his

sentence.  In February, 2009, Applicant had served less than 12 years of his sentence. The BOP calculates that Applicant will have served 75% of his sentence on September 18, 2011.

Applicant maintains that the BOP has incorrectly interpreted the phrase "term of imprisonment to which an offender is sentenced," and that this phrase should be interpreted to mean "the net term after deducting good conduct credits." Utilizing this interpretation, Applicant maintains that he was eligible for elderly release to  home detention under the pilot program no later than February 23, 2010.

It appears that the issue presented here has not yet been addressed by any courts within the Tenth Circuit.  Indeed, Respondent cites only a single unpublished opinion from a District Court in the Middle District of Pennsylvania, *Mangiardi v. Federal Bureau of Prisons*, 2009 WL 4544747 (M.D.Pa., Nov. 30, 2009), in support of its argument that the BOP's interpretation of the phrase "term of imprisonment to which the offender is sentenced" is consistent with the plain language of the Second Chance Act. In *Mangiardi*, the district court determined the phrase "term of imprisonment to which the offender was sentenced" unambiguously refers to the term of imprisonment imposed by the sentencing court, without consideration of good conduct time.  *Mangiardi*, 2009 WL 4544747 *6.

Applicant contends, however, that his interpretation is consistent with the BOP's interpretation of the phrase "term of imprisonment" in 18 U.S.C. § 3624(b)(1), the statute which allows a prisoner to earn credit toward the service of his sentence for exemplary conduct in prison.  That statute provides in relevant part that an eligible prisoner may receive credit towards the service of the prisoner's sentence, beyond the time served,

4

"of up to 54 days at the end of each year of the prisoner's *term of imprisonment*, beginning at the end of the first year of the term . . .." 18 U.S.C. § 3624(b)(1). As set forth in *Wright v. Federal Bureau of Prisons*, 451 F.3d 1231 (10th Cir. 2006), the BOP takes the position that the phrase "term of imprisonment" as used in section 3624(b)(1) mandates calculation of good time credit based on the amount of time actually served in prison, as opposed to calculating credit based upon the entire sentence imposed. *Wright*, 451 F.3d at 1233. In *Wright*, the Tenth Circuit found that the phrase "term of imprisonment" had inconsistent meaning throughout § 3624 and was ambiguous, but held that the BOP's interpretation of phrase in § 3624(b)(1) is reasonable within the deference due under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and that the rule of lenity does not apply. *Id.* at 1233-36.

Similar to the *Wright* case, my analysis in this case is governed by *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), because the issue presented involves the BOP's construction of a statute. Under *Chevron*, I must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 843. "If congressional intent is clear from the statutory language, the inquiry is over," and I "must give effect to the unambiguously expressed intent of Congress." *Lee v. Mukasey*, 527 F.3d 1103, 1106 (10th Cir. 2008) (citations omitted). Here, I agree with Respondent that in the context of 42 U.S.C. § 17541, the phrase "term of imprisonment to which the offender was sentenced" unambiguously refer to the term of the sentence imposed by the sentencing court, and does not include consideration of good time conduct in determining an inmate's eligibility for participation in the pilot program. Although the phrase "term of imprisonment" has been found to

have an inconsistent meaning within 18 U.S.C. § 3624, its meaning within 42 U.S.C. § 17541 is clear. I note that, unlike 18 U.S.C. § 3624, in 42 U.S.C. § 17541 the phrase "term of imprisonment" is further modified by the phrase "to which an offender was sentenced." As the district court observed in *Mangiardi*, good conduct credits are not part of the term imposed by the sentencing court, they are deducted from an inmate's statutory release date to establish a projected good conduct time release date. *Mangiardi*, 2009 WL 4544747 at *6. I agree with Respondent that the BOP has correctly determined that Applicant is not yet eligible for participation in the pilot program pursuant to the Second Chance Act of 2007.

Based on the above findings, I conclude that the Application must be denied.

Accordingly, it is

ORDERED that the Application is **DENIED** and the action is DISMISSED WITH PREJUDICE on the merits. It is

FURTHER ORDERED that the Motion for Order for the Court to Decide This Matter as Law and Justice Require, filed by Applicant on March 16, 2010 [#18] and the Motion for Order to Take Judicial Notice Pursuant to Fed. R. Evid. 201(d), filed by Applicant on April 14, 2010 [#19], are both **DENIED AS MOOT**. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated:  May 3, 2010

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge